[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff whose maiden name is Mary Jo Furci (and whose name at the time of this marriage was Mary Jo Jacobelli), and the defendant, were married on June 30, 1985 in Yorktown Heights, New York. At least one of the parties to this marriage has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children issue of this marriage: Robert Thomas Ervolino, born July 2, 1987; and Jaclyn Louise Ervolino, born July 2, 1991. No other minor children have been born to the plaintiff wife since the date of marriage of the parties. The State of Connecticut has not contributed to the support of either of the parties.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that each party is equally at fault for the breakdown.
The plaintiff is forty-four years old.
The plaintiff is employed as a hostess/salon assistant working between four and four and a half days weekly. She is not a licensed hairdresser. The plaintiff earns $10 hourly at her place of employment and averages thirty-four hours weekly. In addition to the $340 gross weekly wages, the plaintiff averages $6 to $7 weekly on tips. Her gross weekly income is $347. Her net weekly income for child guideline support purposes is $270. The court finds that it is desirable for the plaintiff not to have to work full-time in view of the fact that she has custody of the minor children.
The plaintiffs financial affidavit dated September 17, 1999 shows a weekly day care expense of $131. That expense does not presently exist. Although not shown on her financial affidavit, she has a weekly expense for the children for health insurance under the Husky plan of $12. The cost for her own medical health insurance is $65 weekly as of October 1, 1999.
The plaintiff has household furniture with a value of $1500. She has bank accounts totaling $912. There are also miscellaneous children bank accounts with a value of approximately $1500. CT Page 600
The plaintiff has a one-third ownership interest in a non-profit theater group known as Brookfield Theater and Dance. That interest is not shown on her financial affidavit. The theater group was started in March, 1998. The plaintiff did not put any money into the theater group. She did spend approximately $46 in 1999 on behalf of the theater group. The theater is primarily a summer play group. She is in a partnership with two other individuals.
The medical bills incurred for the children for which the defendant is responsible for one-half is a total of $192 with the defendant being responsible for $96.
The defendant is a licensed chiropractor in the State of Connecticut. He was employed in his practice on the date the parties married and continued his employment as a chiropractor until 1997. By 1996, he was working approximately three days as a chiropractor and was working two days at a business owned by his family located at the JFK Airport in New York. He closed his chiropractor practice in May of 1997. By May of 1997, he was working full-time at the family business. He would leave the family residence on Monday morning and remain in New York at his mother's home until Saturday afternoon when he would return to the family residence. He continued commuting from May of 1997 to March of 1998 when the parties mutually agreed that he would vacate the family residence. He then moved into his mother's residence in Queens where he still resides.
The defendant is forty-six years old and an excellent health. He has a Bachelor's degree from Fordham University as a doctor of chiropractic. He first opened his chiropractic office in 1983. He practiced in the Danbury area for approximately fifteen years as a sole practitioner. Managed care made it difficult for him to continue to make money in that practice. He was not able to get new patients and less money was allowed for the treatments that he performed and fewer treatments were allowed. He closed his chiropractic office on Mother's Day 1997. The court finds that he did not voluntarily reduce his earnings as a result of closing his chiropractic office. He does not presently have any plans to return to chiropractic medicine.
The defendant's financial affidavit dated September 16, 1999, shows an $85 weekly expense for education. That was an expense for a student loan that has since been paid off in full. He has a MasterCard liability with a balance of $6,168; a Discover card CT Page 601 liability with a balance of $1,600; a liability to a dentist with a balance of $600; and taxes owed to the IRS, New York State and New York City with a balance $8,500. The parties are in dispute as to the current gross weekly income of the defendant from Robert Ervolino Construction. From the evidence presented, the court finds that his gross weekly income is $789, and his net weekly income for child support guideline purposes is $572.
The defendant's financial affidavit states in part as follows: "Newtown Savings Bank (joint savings) $9,714.36 (wife has removed $6,000 estimated) of this money)." The court finds that the $6,000 that the plaintiff removed from that account in fact was funds that were her oldest adult son's money who is a child from her first marriage. There is at the present time no balance in that account. The remaining funds were used by the plaintiff in part for legal fees and in part for taxes. The defendant had previously removed $6,000 of the oldest son's money from an account in the oldest son's name and put it in the Newtown Savings account. The plaintiff removed the funds from the Newtown Savings account and returned it to her oldest son.
The defendant is presently employed as a contractor by Robert Ervolino Construction doing repairs to the buildings, as well as construction work and maintenance work for the buildings owned by his employer. He is the only person hired by Robert Ervolino Construction Company to do that work. He gets paid $200 daily for that work.
The defendant claims that he owes his parents $25,000 that was advanced to him to start his chiropractic office. The court finds that that claim is not credible. He also claims that he owes his parents $10,000 that was advanced to him to purchase the 1988 Chevrolet that he presently owns. The court finds that his claim that he owes his parents $10,000 is also not credible.
The plaintiff charged various items that were put on the defendant's MasterCard including $600 for plane tickets; $1,600 for a vacuum; and $250 for psychotherapy charges. The defendant was able to have the $600 charges for airline tickets made by the plaintiff on his credit card removed from his credit card.
The defendant has two separate life insurance policies — one in the amount of $121,000 in which the plaintiff continues to be the beneficiary, and a second in the amount of $101,000 in which the plaintiff is also the beneficiary. The premium on one of the CT Page 602 policies is $171 quarterly, and the premium on the other policy is $143 quarterly.
The defendant has approximately $1,300 at the North Fork Bank that is not shown on his financial affidavit.
The defendant has a MasterCard liability with a balance of $6,168; a Discover Card liability with a balance of $1,600; and a dentist liability with a balance of $600. He also has $3,500 cash surrender value in his $121,000 life insurance policy.
The defendant had a part-time business selling Christmas trees with his brother in Queens, New York. The defendant was paid $200 daily for selling Christmas trees. He earned approximately $1400 from Robert J. Ervolino Construction Company for selling the trees in 1998. The Robert Ervolino Construction Company does not intend to sell Christmas trees during Christmas of 1999.
The family home located at 22 Prospect Drive, Brookfield, Connecticut was purchased in 1988 by the plaintiff and the defendant. There was an approximate $30,000 down payment that came from funds provided by the plaintiffs parents. From the evidence presented, the court finds that the $30,000 was not intended as a gift. The parties paid back to the plaintiffs parents $5000 in 1993. The source of the funds was the defendant's chiropractic business. The check was written by the defendant to the plaintiffs father. No other repayments have been made regarding the $30,000. The plaintiffs financial affidavit dated September 16, 1999, states that there was a second mortgage on the family home to C. Furci. In fact, that is not a second mortgage but rather is a prejudgment remedy. C. Furci is one of the plaintiffs parents. A revised financial affidavit filed by the plaintiff dated September 17, 1999 shows that there is a lien rather than a second mortgage on the family home with a balance of $25,000. At the present time, there is a foreclosure action pending by Fairbank Capital Corporation against the plaintiff and the defendant on the first mortgage for the family home. The balance due on the first mortgage is approximately $140,000. The parties are in dispute as to the fair market value of the home. From the evidence presented, the court finds that the fair market value is $176,000.
It is approximately 80 miles from the defendant's residence at Howard Beach in the Queens to the plaintiffs present residence in Brookfield. It takes approximately 80 to 90 minutes to drive from CT Page 603 the family home in Brookfield, Connecticut, to the defendant's residence in Queens, New York. Between June of 1998 and July of 1999, the defendant was driving both ways when exercising his visitation rights. Since July of 1999, he has refused to drive the children back home. The plaintiff owns a 1986 Oldsmobile that has approximately 180,000 miles on it.
Since July of 1999, the plaintiffs parents have been driving to the Queens to pick up the children and return them to the plaintiffs residence. The present routine of the children regarding school is that the son's school ends at approximately 2:30 p. m. and he then goes to a friend's home. The daughter's school ends at approximately 3:30 p. m. She takes a bus to a friend's home. The son arrives at his friend's home at about 2:35 p. m., and the daughter arrives at her friends home at about 4 p. m.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of §46b-81 (c) regarding the issue of property orders, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-56 regarding the issue of custody and visitation, and has considered the provisions of § 46b-62
regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS
A. BY WAY OF DISSOLUTION OF MARRIAGE
1. The marriage between the parties has dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The defendant is to pay to the plaintiff alimony in the sum of $80 per week.
2. Alimony is to terminate upon the remarriage of the plaintiff or the death of either party or July 1, 2009, whichever date is earliest. Alimony is non-modifiable as to term. The youngest child will have reached age eighteen by July 1, 2009, and the plaintiff will be able to seek full-time employment as of that date and will have less of a need for alimony. CT Page 604
3. The provisions of §§ 46b-86 (a) and 46b-86 (b) are applicable.
C. BY WAY OF CUSTODY AND VISITATION
1. The parties shall have joint legal custody of the minor children with the primary physical residence of the children to be with the plaintiff.
2. The husband shall have reasonable, liberal and flexible visitation with the children as follows:
(a) Alternate weekends (including Friday or Monday if it is a holiday weekend and school vacation day).
(b) Thanksgiving from Wednesday through Sunday in odd numbered years (with the wife in even numbered years).
(c) Easter in odd numbered years (with the wife in even numbered years).
(d) Each Christmas vacation from December 28, at 5 p. m. until January 1 at 4 p. m. in odd years; and from December 24 at 3 p. m. until December 28 at 5 p. m. in even numbered years.
(e) Each summer — one week in July and one week in August (with at least two weeks between visits); and the children will be with the wife for the week after school ends and for the week before school begins. The husband is to provide his choice of dates, in writing, by registered mail return receipt or certified mail return receipt, by April 1 of each year.
(f) The children's Spring/Easter school break will be alternated, with the husband having the children in odd numbered years.
(g) Mother's Day shall be with the wife, and Father's Day shall be with the husband, overriding the weekend schedule.
3. The transportation necessary for the husband to exercise his visitation shall be the responsibility of both parties, such that the parties will meet on the Friday evening of visitation between the hours of 6:15 p. m. and 6:30 p. m. at the Ramada Inn at Exit 3 off of Interstate 684 in New York; the parties shall exchange the CT Page 605 children at the end of the visitation period on Sunday between the hours of 4 p. m. and 4:15 p. m. at the same location. The parties will notify the other in advance if there are any transportation problems, and the exchange shall not take place in bad weather. If the husband is more than one hour late beyond the time scheduled above, then the wife shall have the right to return home with the children on the Friday evening of the scheduled visitation.
The husband shall not pick up any of the children from their respective school or after-school care, or any scheduled activity without prior notice to and consent of the wife.
D. BY WAY OF SUPPORT
1. The defendant is ordered to pay to the plaintiff support in the amount of $198 weekly. In addition, he is to pay .444 percent of the unreimbursed and uncovered medical expenses and child care contribution. The plaintiff is to provide health insurance for the benefit of the minor children as is available through the Huskey plan.
2. The defendant has the right to claim both minor children as exemptions for federal and state income tax purposes for each calendar year in which he is current in his support and alimony obligations at the end of such calendar year.
3. The defendant is to maintain and pay for the premium on the Minnesota Mutual Life Insurance policy in the face amount of $101,000 currently on his life for the benefit of both minor children for so long as child support is payable. When child support is no longer payable for the oldest child, then the insurance is to be maintained for the benefit solely of the younger child until support is no longer payable for the younger child. The defendant is to provide to the plaintiff on January 15, 2001 and on the 15th day of January annually thereafter, proof of the existence of said policy and the name of the respective beneficiaries and proof of payment of the premiums. Should the defendant die and said policy not be in effect, then there shall be a lien against his estate for the face amount of said policy. The defendant shall not hypothecate or reduce the current face value of said policy.
E. BY WAY OF PROPERTY ORDERS CT Page 606
1. The defendant is to quitclaim to the plaintiff by January 28, 2000, all of his right, title and interest in the family home located at 22 Prospect Drive, Brookfield, Connecticut. The plaintiff thereafter shall be responsible for the first mortgage owed to Fairbanks Capital as well as any debt owed to her parents in the approximate balance of $25,000, and is to hold the defendant harmless therefrom.
2. The plaintiff is to be responsible for all of the liabilities shown on her financial affidavit and she is to hold the defendant harmless therefrom.
3. The defendant is to be responsible for all of the liabilities shown on his financial affidavit and he is to hold the plaintiff harmless therefrom.
4. The 1988 Oldsmobile Delta with a fair market value of $1000 shown on the plaintiffs financial affidavit is awarded to the plaintiff.
5. The two bank accounts shown on the plaintiffs affidavit with a balance of $912 are awarded to the plaintiff.
6. The 1986 Chevrolet Suburban shown n the defendant's financial affidavit with a value of $1500 is awarded to the defendant.
7. The Norfolk bank account owned by the defendant with a balance of $1300 is awarded to the defendant.
8. The $3,500 cash surrender value in the life insurance policy is awarded to the defendant.
9. All personal property and household furniture and furnishings in the possession of the plaintiff are awarded to the plaintiff.
10. All personal property and household furnishings in the possession of the defendant are awarded to the defendant.
11. The plaintiff is to be the primary signer and administrator of the children's bank accounts.
F. BY WAY OF ATTORNEY'S FEES CT Page 607
1. No attorney's fees are awarded in favor of either party.
G. MISCELLANEOUS ORDERS
1. The parties are to exchange copies of their federal and state income tax returns within thirty days of such returns have been filed for so long as there is an outstanding support order or an outstanding alimony order or any outstanding support or alimony arrearage.
2. All pendente lite orders remain in effect until the date this decision is filed, and in the event there is any arrearage arising from such pendente lite orders, such arrearage is not merged into the judgment.
Axelrod, J.